IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF NEW YORK

---

FEDERAL TRADE COMMISSION and
PEOPLE OF THE STATE OF NEW YORK,
by ERIC T. SCHNEIDERMAN, Attorney
General of the State of New York,

        Plaintiffs,

v.

VANTAGE POINT SERVICES, LLC, a New
York limited liability company; PAYMENT
MANAGEMENT SOLUTIONS, INC., a New
York corporation; BONIFIED PAYMENT
SOLUTIONS, INC., a New York
corporation; GREGORY MACKINNON,
individually and as an officer of one or more
of the Corporate Defendants; MEGAN
VANDEVIVER, individually and as an
officer of one or more of the Corporate
Defendants; ANGELA BURDORF,
individually and as an officer of one or more
of the Corporate Defendants; and JOSEPH
CIFFA, individually and as an officer of one
or more of the Corporate Defendants,

        Defendants.

Civil Action No. 15-CV-0006S

---

**MEMORANDUM OF LAW**

Dennis C. Vacco, Esq.
Eric M. Soehnlein, Esq.
**Lippes Mathias Wexler Friedman LLP**
665 Main Street, Suite 300
Buffalo, New York  14203
Telephone: (716) 853-5100
*Attorneys for Defendants, Vantage
Point Services, LLC, Payment
Management Solutions, Inc., Greg
MacKinnon, Angela Burdorf, and
Megan VanDeViver*

## I.    INTRODUCTION

The lynchpin of the Government's case is the assumption that Vantage Point Services and Payment Management Solutions (and the companies' principals) controlled the wrongful collection tactics of debt collection agencies that are not named defendants in this case.   The Government's theory – which aims to permanently shut-down corporate defendants and permanently preclude individual defendants from the debt collection industry forever – is not premised on direct evidence.   Instead it is based on the allegations that Defendants did not engage in an arm's length business relationship, and an assumption that individual defendants were able to exercise authority and control over companies that are not parties in this case.   The Government's theory is simply inaccurate, and the Court should deny the Government's motion for a preliminary injunction.

## II.    THE DEFENDANTS WERE NOT OPERATING AS A COMMON ENTERPRISE

In determining whether a "common enterprise" exists, courts consider a variety of factors, none of which are dispositive.   Simply put, in order to sustain its case, the Government must demonstrate that the pattern and framework of the whole enterprise demonstrates a "maze of interrelated companies," rendering such entities virtually indistinguishable from one another.   The Government cannot do so.

In determining whether a "common enterprise" exists, courts have looked to several factors, including, but not limited to: (1) common control; (2) the sharing of office space and officers; (3) whether business is transacted through a maze of

interrelated companies; (4) the commingling of corporate funds; (5) the failure to maintain separation of companies; (6) unified advertising; and (7) evidence that reveals no real distinction exists between the corporate defendants. *FTC v. Consumer Health Benefits Assn.*, 2012 U.S. Dist. LEXIS 72161 (E.D.N.Y. May 21, 2012) *citing FTC v. Neovi, Inc.*, 598 F.Supp.2d 1104, 1116 (C.D. Cal. 2008) (finding corporate entities that operate in a common enterprise may be held liable for one another's deceptive acts and practices). The law suggests that a defendant must have numerous and significant ties to its co-participants and its unlawful practices in order to be considered a part of the common enterprise. *FTC v. Network Servs. Depot, Inc.,* 617 F.3d 1127, 1142 (9th Cir. 2010).

In short, a common enterprise will be found only where two or more companies "[d]o not operate as arm's length entities, but instead are so interrelated as to render them virtually indistinguishable from one another." *FTC v. AmeriDebt, Inc.*, 343 F.Supp.2d 451, 463 (D. Md. 2004). There is not one universal or mandatory factor used to determine whether a common enterprise exists, rather "the pattern and framework of the whole enterprise must be taken into consideration." *Del. Watch Co.,* 332 F.2d at 746.

In the absence of a common enterprise, a defendant cannot be held liable for the direct violations of another entity. *FTC v. Kuvkendall*, 371 F.3d 745, 759 (10th Cir. 2004) In that decision the Circuit Court ruled "neither the court nor the FTC pointed us to any evidence that any corporate defendant other than DMS engaged in any of the conduct outlined above…nor has our review of the record revealed any,

3

and therefore, those other corporate entities could not be held liable for the acts of the entity that actually violated the Act.".

As a threshold matter, a review of *FTC v. Payday Financial LLC*, 989 F.Supp.2d 799 (D.S.D. 2013) is instructive in this case.  In *Payday Financial*, the District Court, in denying the FTC's motion for summary judgment, found there to be a genuine issue of material fact as to whether the defendants operated as part of a "common enterprise".  Although the court found several attributes of a common enterprise among many of the defendants, such as commonality of ownership, employees and office location, as well as the commingling of corporate funds, it nevertheless determined that the issue presented a question of material fact.  Notably, the court took issue with whether the defendant performing payroll and accounting functions could be considered part of the alleged common enterprise when the conduct at issue was the offering of loans and the collection practices thereon.  *See Payday Financial*, 989 F.Supp.2d at 809.

Here, it is unlikely that the Government will be able to set forth clear and convincing evidence of a common enterprise.

First, and perhaps most importantly, the Government has not and cannot present any evidence of common control.  There is no evidence that Vantage Point, Payment Management Solutions or its principals controlled the collection or compliance activities of third party debt collection companies.  To the contrary, the evidence demonstrates that those entities transacted business with Defendants on an arms length basis, were responsible for their own employees and their

employees' activities, and – critically – that they sought out business opportunities from other debt purchasing companies.  A fatal flaw in the Government's case is that most of the non-party collection companies who are alleged to have been part of the common enterprise <u>and</u> who are alleged to have violated the law were not brought under the control of the Receiver and continue to do business.

Second, contrary to the allegations of the Government, the office space utilized by the corporate defendants does not evidence a common enterprise.  In the normal course of business, Vantage Point and Payment Management Solutions had offices that were separate and distinct.   Those offices were separate from other debt collection agencies and had safeguards to protect consumer information related to payment processing.

Further, and as is set forth in greater detail  in the accompanying attorney declaration, the companies at issue are not interrelated and the evidence demonstrates that a real and meaningful distinction existed between Defendants and the third party collection agencies.   Indeed, as is demonstrated by the Receiver's First Interim Report, the third party debt collection agencies that undertook the allegedly wrongful conduct were wholly owned and controlled by non-party individuals.  Those companies had their own bank accounts, filed their own taxes, took care of their own payroll and human resources, and exercised discretion in the manner in which they did business.  The companies did not market or advertise in a unified manner.   Put plainly, just because those companies

transacted business with the Defendants over a period of time does not mean that the companies were interrelated or part of a common enterprise.

The Government's allegation that Defendants were operating in a common enterprise with third party (and non-party) collection entities is just that – an allegation. The Government cannot sustain its proof at trial, and the Court should deny the Government's motion for a preliminary injunction.

### III. THE COURT SHOULD DISREGARD THE DEBTOR DECLARATIONS SUBMITTED WITH THE TEMPORARY RESTRAINING ORDER OR SET A DATE FOR A HEARING ON THE CREDIBILITY OF THAT EVIDENCE

In connection with its motion for an ex parte Temporary Restraining Order ("TRO"), the Government submitted a number of declarations from debtors who claimed to have been harassed by wrongful debt collection behavior. As is set forth in the attorney declaration, it appears those declarations were prepared by agents of the Federal Trade Commission and not by the deponents themselves. Likewise, the allegations made in those declarations are not the subject of cross-examination or any other form of verification. More importantly, there is nothing in those declarations that demonstrates any agency or control by Defendants over the non-party debt collection entities that engaged in the alleged wrongdoing described in the debtor declarations.

In stark contrast, the evidence submitted by Defendants in this motion calls into question the veracity of many of the facts asserted in the declarations submitted with the TRO. Defendants' proof calls into question the nature of the relationship between Defendants and third party debt collection companies as well

as whether or not Defendants were the party responsible for the alleged wrongful collection activity.

The weight given to affidavits is within the district court's discretion. *See, e.g., Federal Sav. & Loan Ins. Corp. v. Dixon*, 835 F.2d 554, 558 (5th Cir. 1987). The law is clear – courts should be wary of granting injunctive relief on the basis of conclusory affidavits. *Atari Games Corp. v. Nintendo of Am., Inc.,* 897 F.2d 1572, 1575 (Fed. Cir. 1990). In *Forts v. Ward*, 566 F.2d 849 (2d. Cir. 1977), the Court held that it is well established that motions for preliminary injunction should not be resolved on the basis of affidavits which evince disputed issues of fact. *Id.* In addition, the *Ward* Court cautioned that courts should look to see whether the affidavits reveal areas which deserve probing beyond the information contained in vague or conclusory affidavits. *Id.* Other courts have noted that resolving factual disputes on affidavits or depositions is disfavored, since doing so is merely showing a preference for one piece of paper to another. *SEC v. Spectrum, Ltd.*, 489 F.2d 535, 540-541 (2d Cir. 1973). The *Spectrum* Court also noted that oral testimony is a medium far superior for evaluating credibility than the cold written word. *See also Dopp v. Franklin National Bank*, 461 F.2d 873,879 (2d Cir. 1972) (generally a judge should not resolve a factual dispute on affidavits or depositions).

Thus, in the Second Circuit it is well settled that where evidence submitted by affidavits and related proof in the context of a preliminary injunction motion call essential facts into dispute, the Court should not take the allegations of the affidavits as true, but instead should set a date and time for a hearing on the

credibility of the proof.   *See, e.g., Visual Sciences, Inc. v. Integrated Communications, Inc.*, 660 F.2d 56 (2d Cir.1981).

## IV.   THE COURT SHOULD DENY THE GOVERNMENT'S REQUEST FOR A PRELIMINARY INJUNCTION

The FTC Act authorizes the Federal Trade Commission to obtain a preliminary injunction "[u]pon a proper showing that, weighing the equities and considering the Commission's likelihood of ultimate success, such action would be in the public interest." 15 U.S.C. § 53(b). The FTC need not show irreparable harm; rather, the court must (1) determine that the FTC has a fair and tenable chance of ultimate success on the merits, and (2) consider the equities. *United States v. Sun & Sand Imps., Ltd.*, 725 F.2d 184, 188 (2d Cir. 1984); *F.T.C. v. Lancaster Colony Corp.*, 434 F. Supp. 1088, 1090-91 (S.D.N.Y. 1977)).

As a threshold matter, the evidence in this case demonstrates that the likelihood of the Government's success on the merits is, at best, suspect.  As is set forth in the accompanying attorney declaration, the facts of this case demonstrate that the requisite nexus between Defendants and third party debt collection entities is lacking.

Further, the equities in this case do not favor a preliminary injunction in favor of the Government.  Throughout this response, Defendants have explained that they generally do not engage in consumer debt collection and are not responsible for the alleged wrongful debt collection activity in the declarations submitted by the Government.  It is also clear that the third party entities that did

engage in the debt-collection activity continue to operate independent of this litigation. Put plainly, the institution of a preliminary injunction has no impact on the safety or well-being of consumers.  It is well-settled that where the Government cannot demonstrate that the purported wrongdoing will be affected by the institution of a preliminary injunction, the Court should deny that relief.

V.   **IF THE COURT DOES NOT DENY THE GOVERNMENT'S MOTION IN ITS ENTIRETY, THE COURT SHOULD HAVE AN EVIDENTIARY HEARING ON THE ISSUE OF COMMON ENTERPRISE**

There is no hard and fast rule in this Circuit that oral testimony must be taken on a motion for a preliminary injunction or that the court can in no circumstances dispose of the motion on the papers before it.  *Redac Project 6426, Inc. v. Allstate Insurance Co.*, 402 F.2d 789, 790 (2d Cir. 1968).  But, where (as in this case) "essential facts are in dispute, there must be a hearing . . . and appropriate findings of fact must be made.'"  *Fengler v. Numismatic Americana, Inc.*, 832 F.2d 745, 747 (2d Cir. 1987) (quoting *Visual Sciences, Inc. v. Integrated Communications, Inc.,* 660 F.2d 56, 58 (2d Cir. 1981); *see also Consolidated Gold Fields PLC v. Minorco, S.A.*, 871 F.2d 252 (2d Cir. 1989).

Here, factual issues regarding common control and the relationship between corporate defendants and non-party companies are sharply in dispute, and a determination of those issues will have a dispositive impact on the present motion.  For that reason, the Court should have a hearing on the issue of common enterprise.

## VI.   CONCLUSION

For the reasons set forth above, and for the reasons detailed in the Vacco

Dec., the requested relief should be granted.

Dated:        Buffalo, New York
              April 1, 2015

                         LIPPES MATHIAS WEXLER FRIEDMAN LLP


                           s/:  Dennis C. Vacco
                         Dennis C. Vacco, Esq.
                         Eric M. Soehnlein, Esq.
                         665 Main Street, Suite 300
                         Buffalo, New York  14203
                         Telephone: (716) 853-5100
                         *Attorneys for Defendants,*
                         *Vantage Point Services, LLC,*
                         *Payment Management Solutions, Inc.,*
                         *Greg MacKinnon,*
                         *Angela Burdorf, and*
                         *Megan VanDeViver*