UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION and
PEOPLE OF THE STATE OF NEW YORK, by
ERIC T. SCHNEIDERMAN, Attorney General
of the State of New York,

Plaintiffs,

v.

**DECISION AND ORDER**
15-CV-6S

VANTAGE POINT SERVICES, LLC, et al.

Defendants.

## I.  INTRODUCTION

Plaintiffs, the Federal Trade Commission ("FTC") and the New York State Attorney General, commenced this action under Section 13(b) of the Federal Trade Commission Act, 15 U.S.C. § 53(b) ("FTCA"); Section 814 of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692l; New York Executive Law § 63(12); and New York General Business Law § 349 and § 602 for Defendants' alleged abusive and deceptive debt collection practices.  The complaint names four individual defendants and four corporate defendants.  Presently before this Court is Plaintiffs' Motion for Summary Judgment (Docket No. 146), which seeks a permanent injunction and monetary judgment against three individuals, Gregory Mackinnon, Angela Burdorf, and Joseph Ciffa (together, the "Individual Defendants"), and four corporate defendants, Vantage Point Services, LLC ("Vantage"), Payment Management Solutions, Inc. ("PMSI"), and Bonified Payment Solutions, Inc. ("Bonified") (together, the "Corporate Defendants").  Also pending before this Court are Plaintiffs' motion to strike and Defendants' appeals of a Decision and Order by the Magistrate Judge.  For the

1

following reasons, the motions and appeals are denied.

## II.   BACKGROUND

1.   Facts

The following facts are taken from the pleadings and motion papers in this action, including Plaintiffs' Statement of Material Facts (Docket No. 146-2 ("SOF")).  The SOF attaches 470 exhibits totaling more than 1,500 pages.  (Docket Nos. 146-4 through 146-99, 147-1 through 147-3, 163-2).  The exhibits consist of excerpts from Defendants' depositions, consumer declarations, correspondence, business records, telephone recording transcriptions, discovery responses, and other evidence concerning the Defendants' alleged unlawful debt collection practices.  The Defendants have failed to properly respond to the SOF pursuant to Local Rule 56, but do submit memoranda of law and accompanying evidence arguing that they did not participate in, and were unaware of, any unlawful debt collection activities.[1]  This order sets forth only those facts necessary to resolve the pending motions.

Vantage was initially formed in 2008 by Defendant VanDeViver, against whom Plaintiffs have not sought summary judgment.  At that time, Vantage was a debt collection company that placed collections calls on debt that was owned by third parties.  VanDeViver transferred ownership of Vantage to MacKinnon in January 2010.  Under MacKinnon's ownership, Vantage initially continued collecting debt, but later began brokering debt:  purchasing it, selling it, and placing the debt it owned with third parties for collection.

Vantage acknowledges that it continued some debt collection activities until the

---

[1]  Counsel for Ciffa and Bonified appears to have opposed the motion only on behalf of Ciffa.  Nevertheless, this Court will construe the filings as having been filed on behalf of both defendants.

initiation of this suit, but maintains that this was "limited in scope and time" and "represented a small fraction of the collection activity at issue in this litigation." (Docket No. 167 ¶¶ 30-34.)  Vantage contends that its primary line of business was purchasing and placing debt with third parties, and it therefore rarely had direct interaction with consumers.[2]  Consumer contact came instead from third-party call initiators, who were responsible for contacting consumers directly to convince them to pay on the debt owned by Vantage.  Once a consumer agreed to make a payment, the call initiators would transfer the consumer to a separate payment processor, who would obtain the consumer's payment information and authorization for payment.  Defendants maintain that the call initiators and payment processors were wholly independent entities, and that there is no evidence that Vantage or any other Defendant owned or otherwise had the ability to control the third parties who conducted collection activities on Vantage's debt portfolios.

In 2012, Burdorf began working for Vantage as an independent contractor providing payment processing services to Vantage.  Burdorf was made an equitable partner and officer of Vantage, but she states that this was a nominal role, put into place solely so that she could monitor the company's merchant accounts for payment processing without true control of the company.  In April 2013, she left her work as a contractor at Vantage and founded PMSI, where she was the principal member and owner.  Burdorf used money lent by MacKinnon to fund PMSI and to purchase a debt portfolio for collection.  Although PMSI initially collected debt on that portfolio, Burdorf later placed the debt with a third party call initiator located in Nevada and PMSI

---

[2] As defined in the FDCPA, "consumer" refers to a "person obligated or allegedly obligated to pay any debt."  15 U.S.C. § 1692a(3).

changed its focus to payment processing.  PMSI began acting as a payment processor for debt owned by Vantage in August of 2013, and assumed all payment processing services for Vantage-owned debt as of April 2014.  At the time the suit was filed, approximately 75% of PMSI's payment processing services were performed for Vantage.  Between August 2013 and September 2014, PMSI had revenues of approximately $4,423,795 and, between April 2013 and November 2014, PMSI wired over $2,400,000 to Vantage.  PMSI also provided payment processing services for several smaller debt collectors.

Bonified was formed by Ciffa and incorporated in New York State in June 2014. Plaintiffs allege that Bonified was formed to open additional merchant accounts that could accept consumer payments on debt owned by Vantage.  Bonified paid individuals who worked under the name Island Recovery Group, which Plaintiffs allege is a fictitious entity created by Ciffa that also collected on debts owned by Vantage.

MacKinnon initially operated Vantage from a location on Delaware Avenue in Buffalo, then moved to office space at 4248 Ridge Lea Road in Amherst, New York, where it paid rent for Suites 45, 25, and 9, and also held itself out as doing business from Suites 1 and 101.  PMSI operated out of 4248 Ridge Lea Road, Suites 25 and 45. Burdorf has stated that she had a verbal lease with MacKinnon for use of the premises, and that her business was kept entirely separate from Vantage, with separate entrances and locked doors in between the spaces.  Ciffa also operated Island Recovery Group out of 4248 Ridge Lea Road in Amherst, New York.  Ciffa had a lease for the premises he operated out of at Ridge Lea, and deducted the funds for his rent from payments Vantage made to Ciffa for sales and collection work.  All three businesses later left the

4

Ridge Lea offices and Vantage ultimately had operations in three separate locations. Plaintiffs present evidence that suggests that at least one other Defendant operated out of each of Vantage's locations.  Defendants maintain that, although they may have been in the same building, the operations were separate and independent from each other.

The third-party call initiators who collected on debt owned by Vantage have not been named as defendants in this suit.  They include Island Recovery Group, Northwest Capital Solutions, Financial Solutions a/k/a Alternative Dispute Resolution, Ross Delong & Associates, and a company doing business as Stewart Silverman & Associates. Plaintiffs contend that these businesses (Vantage, PMSI, Bonified, and the call initiators) are interconnected, and that Defendants structured their businesses as separate corporate entities in order to avoid liability.  Specifically, by separating the debt collection business into (at least) three parts—the owner of the debt, the call initiator, and the payment processor—Defendants hoped to insulate themselves from any wrongdoing on the part of those who contacted consumers.  Further, by recording the payment processor's interaction with the consumer separately from the interaction with the call initiator, Defendants created a record of consent for payment that did not include any deceptive or illegal tactics.  Plaintiffs contend that Defendants used these recordings to fight chargebacks and other payment disputes.  Defendants contend that each business operated separately and independently, and that all interactions between the entities happened at arm's length.  Defendants further contend that any wrongdoing was committed by the entities who were not named as defendants, and over which the Defendants had no control or oversight.

2.    Procedural History

The FTC and the State of New York filed a nine-count complaint on January 5, 2015.  (Docket No. 1.)  The same day they filed their complaint, Plaintiffs moved for an *ex parte* temporary restraining order ("TRO").   On January 5, 2015, this Court granted Plaintiffs' *ex parte* motion and issued a TRO with an asset freeze and appointment of a Receiver to oversee the named Corporate Defendants and their assets, subsidiaries, and affiliates, including accounts held by Solidified Payment Solutions, LLC and Vision Asset Management Group, LLC.  (Docket No. 11.)  Pursuant to the authority granted by the TRO, Plaintiffs and the Receiver entered Defendants' business premises on January 7, 2015, and the Receiver took control of the Corporate Defendants and related entities.  Plaintiffs then moved for a preliminary injunction with terms similar to the TRO, which this Court granted on May 15, 2015, over Defendants' objections.  (Docket Nos. 61, 62.)

Following discovery, on August 19, 2016, Plaintiffs moved for summary judgment as to six of the seven Defendants.  (Docket No. 146.)  In support of the motion, Plaintiffs argue that recordings, scripts, consumer declarations, complaints, consumer lawsuits, collection letters, and other documents show that the corporate defendants and other allegedly associated businesses violated the FTC Act, the FDCPA, and New York law. With respect to MacKinnon, Burdorf, and Ciffa, Plaintiffs argue that they are individually liable for the Corporate Defendants' wrongdoing because they participated in, or had the authority to control, the Corporate Defendants' activities, and they had knowledge of their unlawful practices.  Plaintiffs seek a permanent injunction that would prohibit the Defendants from engaging in debt collection activities, bar them from making certain

misrepresentations with respect to related consumer financial products and service markets, enable the FTC to monitor their compliance with a final order, and impose a money judgment for $22,534,919, *i.e.*, the amount deposited into a Vantage account used for deposits derived from consumer payments between January 2012 and December 2014.[3]

### III.   DISCUSSION

1.   <u>Motion to Strike</u>

Plaintiffs have moved to strike the attorney declaration submitted by Dennis C. Vacco, counsel to Defendants Vantage Point, PMS, MacKinnon, and Burdorf, in support of their opposition to the summary judgment motion.  Under Rule 56, a declaration used to support or oppose a motion for summary judgment must be "made on personal knowledge, set out facts that would be admissible in evidence, and show that the [ ] declarant is competent to testify on the matters stated."  Fed R. Civ. P. 56(c)(4).  Thus, a court may strike those portions of a declaration that are not made upon the declarant's personal knowledge, contain inadmissible hearsay or make generalized and conclusory statements.   <u>See, e.g.</u>, <u>United States v. Private Sanitation Indus. Ass'n of Nassau/Suffolk, Inc.</u>, 44 F.3d 1082, 1084 (2d Cir.1995).  "Because a decision on the motion to strike may affect [the movant's] ability to prevail on summary judgment, it is appropriate to consider a motion to strike prior to a motion for summary judgment."  <u>Pugliese v. Verizon N.Y., Inc.</u>, No. 05-CV-4005 (KMK), 2008 WL 2882092 (S.D.N.Y.

---

[3] On December 13, 2016, Plaintiffs moved for a TRO and to hold Ciffa in contempt for continued debt collection activities in violation of the Preliminary Injunction.  (See Docket Nos. 190, 191.)  On December 14, 2016, based on evidence of probable violations of the Preliminary Injunction, this Court issued another TRO and froze Ciffa's assets.  (Docket No. 196.)  On January 11, 2017, the parties presented this Court with a stipulation to enter another preliminary injunction (the "Second Preliminary Injunction"), which this Court subsequently ordered.  (Docket Nos. 199, 202.)  The actions at issue in the Second Preliminary Injunction are separate from this motion.

July 10, 2008) (internal quotations and citation omitted).

Plaintiffs argue that the declaration consists entirely of legal argumentation, characterization of the evidence before the Court, and factual statements to which he does not have personal knowledge.  They further note that this Court has previously cautioned Attorney Vacco that his declaration in opposition to the Plaintiff's motion for Preliminary Injunction was "more akin to an adversarial memorandum than a bona fide [declaration]."  (Docket No. 61 at 6 n. 5.)  Plaintiffs therefore move to strike the entire declaration, but not the attached exhibits.    Defendants Vantage Point, PMS, MacKinnon, and Burdorf oppose the motion to strike, arguing that, since the declaration introduces transcripts, exhibits, and other admissible documents, the declaration itself is also properly considered.

Although "it is well established that an attorney's affidavit can be used, in connection with a summary judgment motion, to place documents produced in discovery before the Court," Pace v. Air & Liquid Sys. Corp., 171 F. Supp. 3d 254, 272 (S.D.N.Y. 2016) (internal quotation omitted), Attorney Vacco's declaration goes beyond the introduction of documents and veers into legal argument and factual allegations for which Attorney Vacco has no personal knowledge.  An attorney's affidavit or declaration not based on personal knowledge carries no weight.   Omnipoint Commc'ns, Inc. v. Common Council of City of Peekskill, 202 F. Supp. 2d 210, 213 (S.D.N.Y. 2002); see also Patterson v. County of Oneida, 375 F.3d 206, 219 (2d Cir. 2004) (holding that inadmissible statements in affidavits submitted in support of summary judgment motion are incapable of raising material issues of fact).  And, when an affidavit does not comply with the requirements of Rule 56, the offending portions should be disregarded by the

court.  Wahad v. FBI, 179 F.R.D. 429, 435 (S.D.N.Y. 1998) (citing United States v. Alessi, 599 F.2d 513, 514-15 (2d Cir. 1979)).   However, although such improper portions of the document should not be considered, striking a declaration from the record is at the court's discretion.  Hollander v. American Cyanamid Co., 172 F.3d 192, 198 (2d Cir. 1999).

Using its discretion, this Court will not strike the Vacco declaration from the record and the motion to strike is therefore denied.  However, the legal arguments and factual allegations contained within the Vacco declaration will not be considered. Instead, this Court considers only those sections that introduce the attached exhibits.

2.    Motion for Summary Judgment

Motions for summary judgment are governed by Rule 56 of the Federal Rules of Civil Procedure.   "The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party bears the initial burden of demonstrating the absence of any genuine dispute or issue of material fact by pointing to evidence in the record, "including depositions, documents . . . [and] affidavits or declarations," id. 56(c)(1)(A), "which it believes demonstrate[s] the absence of a genuine issue of material fact," Celotex Corp. v. Catrett, 477 U.S. 317, 323, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).

Once the moving party has fulfilled its preliminary burden, the onus shifts to the nonmoving party to raise the existence of a genuine dispute of material fact.  Id. 56(c)(1)(A); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).  A genuine dispute of material fact exists when "the evidence is such

that a reasonable jury could return a verdict for the nonmoving party." Anderson, 477 U.S. at 248; Benn v. Kissane, 510 F. App'x 34, 36 (2d Cir. 2013).   Courts must "constru[e] the evidence in the light most favorable to the nonmoving party and draw[ ] all reasonable inferences in its favor." Fincher v. Depository Trust & Clearing Corp., 604 F.3d 712, 720 (2d Cir. 2010) (quoting Allianz Ins. Co. v. Lerner, 416 F.3d 109, 113 (2d Cir. 2005)).   In reviewing the record, "the judge's function is not himself to weigh the evidence and determine the truth of the matter," Anderson, 477 U.S. at 249; see also Kaytor v. Elec. Boat Corp., 609 F.3d 537, 545 (2d Cir. 2010) ("The function of the district court in considering the motion for summary judgment is not to resolve disputed questions of fact"), nor is it to determine a witness's credibility, Anderson, 477 U.S. at 249.   Rather, "the inquiry performed is the threshold inquiry of determining whether there is the need for a trial." Id. at 250.

A. *Local Rule 56*

Local Rule 56 requires a moving party to submit a statement in numbered paragraphs "of the material facts as to which the moving party contends there is no genuine issue to be tried." L. R. Civ. P. 56(a)(1).   A nonmoving party must then submit a correspondingly numbered response to each paragraph, and failure to do so is construed as an admission that the fact is undisputed.   L. R. Civ. P. 56(a)(2).   "If a nonmoving party fails to comply with local rules governing summary judgment, a district court may rely on a moving party's statement of undisputed facts as long as those facts are supported by the record." Mcmolis v. Brecher, 588 F. App'x 85, 87 (2d Cir. 2015) (summary order).

Here, Defendants have not filed an opposition statement under Local Rule

56(a)(2) responding to Plaintiffs' Rule 56 Statement of Facts.  Instead, they submit two memoranda of law and thirteen declarations, as well as several additional exhibits, including deposition transcripts.   Rule 56 does not require the Court "to perform an independent review of the record to find proof of a factual dispute."  Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (citations omitted); see Covelli v. Nat'l Fuel Gas Distrib. Corp., 2001 WL 1823584, at *1 (W.D.N.Y. 2001) (holding that the district court "may, but is not required to, search the record for evidence which the party opposing summary judgment fails to point to in his [Loc. Rule 56] statement"). However, Plaintiffs, as the moving parties, must still meet their burden to establish that summary judgment is appropriate under the law and that no material issue of fact remains for trial.  See Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004) ("If the evidence submitted in support of the summary judgment motion does not meet the movant's burden of production, then 'summary judgment must be denied *even if no opposing evidentiary matter is presented.*'" (quoting Amaker v. Foley, 247 F.3d 677, 681 (2d Cir. 2001) (emphasis in original)).

This Court will deem the Plaintiffs' Statement of Facts admitted to the extent that it is supported by admissible evidence and to the extent that it is not contradicted by the admissible evidence of which this Court has notice through Defendants' motion papers. Compare Holtz v. Rockefeller & Co., 258 F.3d 62, 73-74 (2d Cir. 2001) ("[W]here there are no[ ] citations or where the cited materials do not support the factual assertions in the [Local Rule 56] Statements, the Court is free to disregard the assertion" and review the record independently.), with Amnesty Am. v. Town of W. Hartford, 288 F.3d 467, 470 (2d Cir. 2002) (Rule 56 "does not impose an obligation on a district court to perform

an independent review of the record to find proof of a factual dispute."), and Monahan v. N.Y.C. Dep't of Corrections, 214 F.3d 275, 292 (2d Cir. 2000) ("While the trial court has discretion to conduct an assiduous review of the record in an effort to weigh the propriety of granting a summary judgment motion, it is not required to consider what the parties fail to point out.") (quotation marks omitted).

### B. Common Enterprise

Plaintiffs' case hinges on a finding that the corporate defendants are jointly and severally liable as a "common enterprise," under which "each entity within a set of interrelated companies may be held jointly and severally liable for the actions of other entities that are part of the group." F.T.C. v Tax Club, Inc., 994 F. Supp. 2d 461, 469 (S.D.N.Y. 2014). To determine whether a common enterprise, or "maze of interrelated companies," exists, courts consider "the pattern and frame-work of the whole enterprise." Delaware Watch Co. v. F.T.C., 332 F.2d 745, 746 (2d Cir. 1964). Relevant factors include whether the corporate defendants "(1) maintain officers and employees in common, (2) operate under common control, (3) share offices, (4) commingle funds, and (5) share advertising and marketing." Tax Club, Inc., 994 F. Supp. 2d at 469 (citation omitted). Further, a common enterprise analysis is neither an alter ego inquiry nor an issue of corporate veil piercing; instead, the entities within the enterprise may be separate and distinct corporations. F.T.C. v Wyndham Worldwide Corp., No. 13-1887(ES), 2014 WL 2812049, at *5 (D. N.J. June 23, 2014) (citing F.T.C. v. Direct Benefits Grp., No. 11-1186, 2013 WL 3771322, at *18 (M.D. Fla. July 18, 2013)).

Plaintiffs argue that the Corporate Defendants, together with several non-defendant debt-collecting businesses, are engaged in a single debt-collection

enterprise.  The Plaintiffs' theory, and nearly the entirety of the motion, effectively treats the Defendants and several other businesses that allegedly used illegal tactics to threaten and cajole consumers into paying on debt owned as one large and intertwined business, where corporate distinctions were merely nominal.   In opposition, the Corporate Defendants argue that they are not in the business of debt collection. Vantage claims to have owned debt that was placed with the call initiators for collection. PMSI claims to process payments for consumers who were transferred by the call initiators, but not to actually engage in tracking debtors down or convincing them to pay. Bonified appears not to have been a functional business at the time that suit was filed, although it did pay the salaries of employees at call initiator Island Recovery Group. Accordingly, the majority of the alleged abusive tactics appears to come, not from the Corporate Defendants, but from other companies who have not been named in this suit, including Northwest Capital Solutions, Island Recovery Group, Financial Solutions a/k/a Alternative Dispute Resolution, Ross Delong & Associates, and a company doing business as Stewart Silverman & Associates.   The Corporate Defendants admit that they did business with these entities, either by placing debt with them or by processing payments on debt they were collecting, but maintain that the businesses are separate and distinct entities, each of which operates independently in its own premises, where it manages its own staff and performs its own function.   Therefore, Defendants contend, while certain functions may have been performed for the benefit of one or more of the other Corporate Defendants, they were conducted at arm's length and could not give rise to joint and several liability for any wrongdoing.

Even without having "search[ed] the record" at length, see Covelli, 2001 WL

1823584, at *1, this Court finds that there are numerous disputed issues of fact with respect to the common enterprise theory.   As an initial matter, the majority of the wrongdoing appears to have been committed by the non-defendant call initiators.  This Court uses the term "appears" because the evidence submitted in support of Plaintiffs' motion rarely, if ever, directly links complaints or call scripts to a specific entity.   For example, Plaintiffs state only that illegal call scripts were found on "Defendants' premises," without identifying which premises, which Defendants, or where in that premises the document was found.   (See, e.g., SOF ¶ 195.)   Nor do Plaintiffs make clear which entities made the alleged threats or used illegal tactics on a consumer. Accordingly, although this Court finds that there is overwhelming evidence of wrongdoing, Plaintiffs have failed to link that wrongdoing to any specific Defendant.

Further, there are genuine disputes of material fact as to whether any of the Corporate Defendants acted as a common enterprise with each other, as well as whether they acted as a common enterprise with the call initiators.   Plaintiffs identify a number of instances where the officers and employees of the Corporate Defendants overlapped, but there are disputed facts as to the extent of the overlap, and the Defendants maintain that each business had its own employees.   The third factor, shared office space, is similarly contested.   Although several of the Corporate Defendants shared a street number with each other at different times, Defendants argue that each Corporate Defendant kept a separate suite, with separate entrances, and that these offices were not accessible to each other.   The fourth factor, commingling funds, is disputed because the funds appeared to be held separately and, although Defendants transferred money to each other, they argue that these transfers were made

14

pursuant to contract and for services rendered.

Certainly, "there are many attributes of a common enterprise among many of the Defendants." F.T.C. v. PayDay Fin. LLC, 989 F. Supp. 2d 799, 810 (D.S.D. 2013). However, on a motion for summary judgment,[4] it is not this Court's role to weigh the evidence, assess credibility, or "determine the truth of the matter." Anderson, 477 U.S. at 249. Therefore, "as a matter of law in summary judgment, this Court cannot declare all of the Defendants to constitute a 'common enterprise.' There is some common enterprise here, but which Defendants and whether all Defendants are part of a common enterprise is a matter left open for trial." PayDay Fin. LLC, 989 F. Supp. 2d at 810.[5]

*C. Individual Defendants' Liability*

An individual may be held liable for corporate acts or practices if he "(1) participated in the acts or had authority to control the corporate defendant and (2) knew of the acts or practices." FTC v. Med. Billers Network, Inc., 543 F. Supp. 2d 283, 320 (S.D.N.Y. 2008); see also FTC v. 4 Star Resolution, LLC, 15-CV-112S, 2015 WL 7431404, at *4 (W.D.N.Y. Nov. 21, 2015). Having found that there are genuine disputes of material fact as to the liability of the Corporate Defendants, this Court also finds that there are material disputes as to the liability of the Individual Defendants. Accordingly,

---

[4] This Court notes that it reached a different conclusion based on largely the same evidence and arguments with respect to the issuance of a preliminary injunction. However, "on a motion for a preliminary injunction, the rules of evidence are not strictly applied, and the standard of proof is not the same as the one applicable to a motion for summary judgment." Veramark Techs., Inc. v. Bouk, 10 F. Supp. 3d 395, 401 (W.D.N.Y. 2014) (citing Mullins v. City of New York, 626 F.3d 47, 52 (2d Cir. 2010)).

[5] Because Plaintiffs relied solely on the common enterprise theory to bolster their claims, the motion does not set forth a theory for independent liability as to each of the Corporate Defendants. Based on the evidence presented, it would appear that Vantage, at least, may have violated the FDCPA provisions by appearing to threaten legal action against consumers in "verification letters" sent by its compliance department (see SOF ¶¶ 226-30), since § 1692e(5) prohibits a debt collector from threatening to take any action that it cannot legally take or that it does not intend to take. However, because the argument of liability outside a common enterprise theory is not currently before this Court, it will not be addressed at this time.

this portion of the motion is also denied.

3.    <u>Motion to Unseal</u>

Also before this Court are Defendants' appeals of Magistrate Judge Schroeder's Decision and Order granting Plaintiffs' Motion to Unseal the portions of Defendants' deposition transcripts that were filed in support of the motion for summary judgment.  A magistrate judge's Decision and Order resolving a non-dispositive, pretrial matter is reconsidered by the district judge only when it has been established that it is clearly erroneous or contrary to law.  <u>See</u> 28 U.S.C. § 636(b)(1)(A).  Here, upon thorough review of Judge Schroeder's Decision and Order and the appeals thereof, this Court finds that Defendants have failed to establish that the Order is clearly erroneous or contrary to law.  Accordingly, finding no error, the appeals are denied.  The sealed portions of Plaintiffs' motion for summary judgment will be unsealed.

## IV.    CONCLUSION

Because there are material issues of disputed fact as to the common enterprise theory relied on by Plaintiffs, the Motion for Summary Judgment is denied.  Plaintiffs' Motion to Strike is also denied; however, this Court did not consider the legal arguments and factual allegations contained in the Vacco Declaration.  Defendants' appeals from the Magistrate Judge's decision are denied.

## V.    ORDERS

IT HEREBY IS ORDERED that Plaintiffs' [146] Motion for Summary Judgment is

DENIED;

FURTHER, that Plaintiffs' [182] Motion to Strike is DENIED;

FURTHER, that Defendants' Appeals [150, 157] are DENIED;

FURTHER, that the Clerk of Court is directed to unseal Docket Nos. 154, 154-1,

154-2, 154-3.

SO ORDERED.

Dated: July 17, 2017
Buffalo, New York

/s/William M. Skretny
WILLIAM M. SKRETNY
United States District Judge