UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

FEDERAL TRADE COMMISSION and PEOPLE OF THE STATE OF NEW YORK, by ERIC T. SCHNEIDERMAN, Attorney General of the State of New York,

                            Plaintiffs,

v.

VANTAGE POINT SERVICES, LLC, et al.

                            Defendants.

**DECISION AND ORDER**
15-CV-006S

1.    Presently before this Court is the Receiver's Final Report, requesting the Court to enter an order accepting the Final Report, discharging the Receiver and the Receiver's Bond, and directing a disposition of the funds held by the Receiver. (Docket No. 297). The Receiver's Final Report incorporates by reference the Preliminary Report of the Receiver. (Docket No. 30). Plaintiffs, the Federal Trade Commission ("FTC") and the People of the State of New York, have submitted a response to the Final Report. (Docket No. 298). Plaintiffs state that they have been developing a redress plan "with the aim of partially redressing consumer victims" affected in this action. (Id. at 2).

2.    The Receiver presently holds in the account the total sum of Two Hundred Fifty-Three Thousand, Eight Hundred Twenty-Five and 29/100 Dollars ($253,825.29). (Docket No. 297-1). The Receiver requests allowance of the Receiver's fees to the law firm Harter Secrest & Emery LLP (the Receiver's former law firm, from which the Receiver performed the entirety of its functions and responsibilities), and for the discharge of the Receiver and the Receiver's Bond. It also requests a court-directed disposition of the funds with respect to the claims of the following entities: the Internal Revenue Service

1

("IRS"), the New York State Workers' Compensation Board, the New York State Department of Taxation and Finance, and third-party payment processor Merchants E Solutions/Big Tree ("Merchants Solutions"). The Court addresses each request in turn.

3. First, the Receiver requests the allowance of the second interim and final compensation to the Receiver for services rendered from March 1, 2015, through December 31, 2016, in the total amount of $22,289.68 ($22,062.63 for services rendered, plus disbursements of $227.05) to be paid to the Receiver's former law firm, Harter Secrest & Emery LLP, where the entirety of the Receiver's responsibilities with regard to the Receivership Defendants and Individual Defendants took place. (Docket No. 297 at 5). This amount reflects Harter Secrest & Emery LLP's agreement to accept one-half of the final invoice plus disbursements, in the interest of maximizing funds for consumer redress. (Id.). Moreover, the Receiver asserts that he does not seek compensation for any services rendered from January 4, 2017. Plaintiffs do not oppose the Receiver's request. Accordingly, and upon review of the Receiver's application, supporting materials, and applicable law, the Court finds that the requested fees are reasonable and will grant the Receiver's request to disburse $22,289.68 to Harter Secrest & Emery LLP. See S.E.C. v. Byers, 590 F. Supp. 2d 637, 644 (S.D.N.Y. 2008) (amount of a receiver's compensation is within a court's reasonable discretion).

4. Second, the IRS has filed a claim of $248.50 against Solidified Payment Solutions LLC and Defendant Angela Burdorf. (Docket No. 297-5). Plaintiffs do not oppose the payment of this amount to the IRS. Accordingly, the Court will order payment of $248.50 to the IRS.

5. Third, the New York State Workers' Compensation Board has filed a penalty

claim in the amount of $24,000 for Defendant Payment Management Solutions, Inc.'s ("PMS") failure to provide insurance. (Docket Nos. 297 at 4; 297-4). In Plaintiffs' response to the Final Report, Plaintiffs represent that counsel for the Workers' Compensation Board has advised that it is amenable to subordinating its claim against the Receivership estate to the extent that such funds are used for consumer redress (Plaintiffs represent that this is indeed their intention). (Docket No. 298 at 3). Given the "significant interest in maintaining funds to satisfy claims by consumers," FTC v. Credit Bureau Ctr., LLC, 284 F. Supp. 3d 907, 909 (N.D. Ill. 2018), the Court takes no issue with Plaintiffs' request and, accordingly, this amount shall be subordinated for consumer redress and no payment will be made to the Workers' Compensation Board. See S.E.C. v. Hardy, 803 F.2d 1034, 1037 (9th Cir. 1986) ("[A] district court's power . . . to determine the appropriate action to be taken in administration of the receivership is extremely broad.").

6. Fourth, the New York State Department of Taxation and Finance has filed a claim against PMS in the amount of $2,646. (Docket No. 297-3). This amount is based on estimated unemployment insurance wages for the first quarter of 2015. (Id.). Plaintiffs believe this amount to be an overestimate given the fact that the instant lawsuit was filed on January 5, 2015, and Defendants ceased all operations shortly thereafter. (Docket No. 298 at 3). Accordingly, the Receiver is directed to calculate the appropriate amount due to the New York State Department of Taxation and Finance based on the actual qualifying wages incurred by Defendants. The Receiver shall then submit the appropriate calculation to the Court to determine disposition of the amount owed, if any, to the New York State Department of Taxation and Finance.

7.      Finally, third-party payment processor Merchants Solutions has asserted a charge-back claim against the Receivership in the amount of $42,258.51. (Docket No. 297-2). By way of background, the Receiver obtained a net remittance from Merchants Solutions in the amount of $25,437.30 on April 13, 2015 (purportedly based on the underlying merchant account agreement between Merchant Solutions and PMS). (Docket No. 297 at 3). The Receiver states that he "is unable to determine the merits of the Additional Back Charges" asserted by Merchants Solutions because he "was under the impression that all of the charge backs had been cleared and that the final remittance was <u>net</u> of all adjustments and charge backs." (Docket No. 297 at 4) (emphasis in original). Plaintiffs, in response, ask the Court to direct the Receiver to reject Merchants Solutions' claim given its untimeliness, that the supporting information submitted by Merchants Solutions does not adequately explain the additional chargebacks, and the strong interest in retaining a maximum amount of funds for consumer redress.

8.      Upon examination of the chargebacks, the Court agrees with Plaintiffs. As stated above, on April 13, 2015, Merchants Solutions deposited $25,437.30 to the Receiver, which the Receiver believed to be the "<u>net</u> of the chargebacks and setoffs." (Docket No. 297 at 3, 297-1 at 2). Upon request from the Receiver for proof of the additional chargebacks now being asserted (in the amount of $42,258.51), Merchants Solutions has submitted additional documentation reflecting the chargebacks from the Processing Months from January through June of 2015, attached to the Final Report as Exhibit B. (Docket No. 297-2). Plaintiffs correctly observe that the majority of the chargebacks upon which Merchants Solutions bases its present Additional Chargebacks claim pre-date the April 13, 2015 transfer—in total, $33,191.62. (<u>See</u> <u>id.</u>).

4

9. "Receiveship courts have the general power to use summary procedure in allowing, disallowing, and subordinating the claims of creditors." United States v. Arizona Fuels Corp., 739 F.2d 455, 458 (9th Cir. 1984) (citing 1B J. Moore, Moore's Federal Practice ¶ 0.419[2.-1] at 600 (2d ed. 1983 rev.)); see also FTC v. Febre, 128 F.3d 530, 536 (7th Cir. 1997) ("Courts have regularly awarded, as equitable ancillary relief, the full amount lost by consumers."). Indeed, final relief under Section 13(b) actions such as this one "may include a refund to the consumer of the full amount." F.T.C. v. Home Assure, LLC, No. 8;09-CV-547-T-23TBM, 2009 WL 1043956, at *2 (M.D. Fla. Apr. 16, 2009). Given the above, coupled with the strong interest in retaining funds for consumer redress as well as the court's "wide discretion" in "determining relief in an equity receivership," the Court will direct the Receiver to reject the claim for Additional Chargebacks asserted by Merchants Solutions. Fed. Trade Comm'n v. E.M. Sys. & Servs., LLC, No. 8:15-CV-1417-T-23AEP, 2018 WL 1801214, at *4 (M.D. Fla. Jan. 22, 2018), report and recommendation adopted, No. 8:15-CV-1417-T-23AEP, 2018 WL 1801216 (M.D. Fla. Feb. 15, 2018); see also Fed. Trade Comm'n v. Premier Debt Acquisitions LLC, No. 15-CV-421-FPG, 2018 WL 4963620, at *1 (W.D.N.Y. Oct. 15, 2018) ("Under the final order, any funds held by the Receiver after court-authorized payments and expenses are to be transferred to the FTC and used for equitable relief, including consumer redress."); see also Credit Bureau Ctr., LLC, 284 F. Supp. 3d at 909 ("[T]here is a significant interest in maintaining funds to satisfy claims by consumers.").

In light of the foregoing, IT HEREBY IS ORDERED that the Receiver's Final Report (Docket No. 297) is ACCEPTED to the extent that the Receiver shall:

1. Within thirty (30) days of entry of this Order, submit the appropriate calculation to the Court to determine disposition of the amount owed, if any, to the New York State Department of Taxation and Finance;

2. Disburse $22,289.68 to the law firm of Harter Secrest & Emery LLP;

3. Disburse $248.50 to the IRS;

4. Reject the claim asserted by Merchants Solutions in the amount of $42,258.51 for consumer redress; and

5. Subordinate the penalty claim in the amount of $24,000 asserted by the New York State Workers' Compensation Board, to be used for consumer redress.

FURTHER, that upon making the payments authorized in this order, and upon advising the Court within 30 days of entry of this Order as to the appropriate amount due the New York State Department of Taxation and Finance based on the actual qualifying wages with respect to the claims asserted against the Receivership by the New York State Department of Taxation and Finance, the Court will determine the amount to be disbursed to the New York State Department of Taxation and Finance, if any, and will order disbursement accordingly;

FURTHER, that upon completion of the above directives, the Court, in a subsequent Order, will order the Receiver to transmit any and all remaining Receivership assets to Plaintiffs and file a notice advising the Court that the transfer has been accomplished;

FURTHER, that upon completion of all services to be rendered, the Court will order that the Receiver and the Receiver's bond (Bond #S-836738) be discharged.

SO ORDERED.

Dated: April 11, 2019
Buffalo, New York

<u>/s/William M. Skretny</u>
WILLIAM M. SKRETNY
United States District Judge
